J-S23041-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHANE R. KELEC | : | |
| | : | |
| Appellant | : | No. 1520 MDA 2021 |

Appeal from the Judgment of Sentence Entered August 31, 2021
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s):  CP-36-CR-0005497-2019

BEFORE:   STABILE, J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                **FILED: JANUARY 13, 2023**

Appellant, Shane R. Kelec, appeals from the judgments of sentence imposed after a jury found him guilty of indecent assault of a person less than thirteen years of age, corruption of a minor, unlawful contact with a minor, and endangering the welfare of a child.[1]  He challenges the weight of the evidence sustaining the jury's verdicts.  Upon review, we affirm.

The trial court summarized the factual and pre-verdict procedural history as follows:

> On August 19, 2019, then ten-year-old L.L. told her mother that Appellant—mother's husband and L.L.'s stepfather—had touched

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3126(a)(7), 6301(a)(1)(ii), 6318(a)(1), and 4304(a), respectively.

her inappropriately when she was younger.[2]  Following L.L.'s disclosure, her mother contacted the Lancaster City Police and an interview was arranged between L.L. and a forensic interviewer at the Lancaster County Children's Alliance.  During the August 29, 2019, Children's Alliance interview, L.L. stated that Appellant had called her into his bedroom and told her to pull her pants down. L.L. explained to the forensic interviewer that after her pants were down, "Appellant began touching her private part, later identified as her vagina, with his fingers" and that Appellant "put her up in the middle of the bed and got on top of her 'like he was doing pushups' and put his private part, later identified as his penis, against her private part and moved it back and forth and that white stuff then came of his part."

On August 30, 2019, as a result of the information that L.L. shared with the forensic interviewer, Appellant was charged with the offenses of Criminal Attempt at Rape of a Child, Criminal Attempt at Involuntary Deviate Sexual Intercourse with a Child, Indecent Assault of a Person Less Than 13 Years of Age, Corruption of a Minor, Unlawful Contact with a Minor, and Endangering the Welfare of Children.

Prior to trial, the Commonwealth filed a Petition to Admit Out-of-Court Statements Under the Tender Years Exception, 42 Pa. C.S.A. § 5985.1, seeking to establish the admissibility of the statements that L.L. made to her mother and to the Children's Alliance forensic interviewer.  A hearing was held on October 21, 2020, after which [the trial court] found that both of L.L.'s statements were relevant and provided sufficient indic[i]a of reliability to be admissible as substantive evidence pursuant to Section 5985.1.

A trial commenced on April 5, 2021, during which the jury heard testimony from L.L., L.L.'s mother, the Children's Alliance forensic interviewer, and the officer who filed charges against Appellant. The jury also viewed the recorded August 29, 2019, interview between L.L. and the Children's Alliance forensic interviewer.

---

[2] L.L. testified that she was "[e]ither four or five" years old during the inappropriate touching incident.  N.T. 4/5/21, 97.

Trial Court Opinion, 1/14/22, 1-3 (record citations and footnotes omitted).[3]

On April 6, 2021, the jury found Appellant guilty of the above-referenced offenses. N.T. 4/6/21, 234-35. The jury also found Appellant not guilty of attempted rape of a child and attempted involuntary deviate sexual intercourse.[4] *Id.* at 233-34. After sentencing was deferred for the preparation of a pre-sentence investigation report, the court imposed concurrent terms of nine to twenty-three months' imprisonment, to be followed by three years' probation, for all the offenses. N.T. 8/31/21, 16-17; Sentencing Order, 8/31/21, 1.

Appellant timely filed a post-sentence in which he challenged the weight of the evidence for the following reasons:

(a)  The Victim's mother testified that during the timeframe the Victim alleged the incident occurred, she could not remember "for the life of her" one time that [Appellant] would have been home alone with the Victim.

(b)  The Victim's first disclosure was to her mother [o]n August 19, 2019, 5 years after the alleged incident occurred, the evening before the Victim's half-brother and half-sister were to return to the custody of [Appellant]. At that time, [Appellant] and Victim's mother were involved in a contentious custody dispute regarding the parties' two

---

[3] We note that a compact disc purporting to contain the recorded interview of L.L., that was marked and moved into the record as Commonwealth Exhibit 1 at trial, was included with the certified record for this appeal. Unfortunately, this Court's Legal Systems department was unable to play the files on the disc with the Court's available computer programs. We, therefore, cannot consider the contents of the disc in evaluating Appellant's issue for our review.

[4] 18 Pa.C.S. § 901(a)/18 Pa.C.S. § 3123(a)(7) and 18 Pa.C.S. § 901(a)/18 Pa.C.S. § 3123(a)(7), respectively.

biological children, and, Mother had previously been denied a custodial vacation with the children that was to begin August 20, 2019.

(c) The Victim's story was not consistent on many items, including, initially promising her mother that [Appellant] touched her only with his hand, before later claiming that [Appellant] got on top of her and rubbed up and down until "white stuff came out."

(d) Victim's Mother testified that around this same time period, her brother (the Victim's uncle) had engaged in some sexual type behavior with the Victim.

(e) The victim testified that this occurred on only one occasion, after awaking from a bad dream, and when she wandered into her mother and [Appellant's] bedroom to find her mother.

Post-Sentence Motion, 9/10/21, ¶ 6(a)-(e). Following the denial of that motion, Appellant timely filed a notice of appeal and a court-ordered concise statement of errors complained of on appeal. Rule 1925(b) Statement, 12/20/21; Rule 1925 Order, 11/29/21; Notice of Appeal, 11/24/21; Order Denying Post-Sentence Motion, 10/26/21.

Appellant presents the following issue for our review:

The trial court abused its discretion in finding that the guilty verdict for the charges of indecent assault, corruption of minors, unlawful contact with a minor and endangering the welfare of a minor was not against the weight of the evidence where the testimony was so unreliable, inconsistent and contradictory that the verdict was based purely on conjecture.

Appellant's Brief at 5.

Appellant challenges the weight of the evidence. He takes a five-step approach to assailing the credibility of the Commonwealth's evidence. First,

he points out the victim's mother's testimony about it being uncommon for the victim to have been left alone with him and that she could not think of a time when Appellant was left alone with the victim in order to suggest that the child victim's memory was unreliable. Appellant's Brief at 10-11, *citing* N.T. 4/5/21, 95, 124, 141. Second, he asserts that the victim offered contradictory accounts of the circumstances surrounding the disclosure of the touching incident to her mother. Appellant's Brief at 11-12, *citing* N.T. 4/5/21, 106-07, 125, 144; Commonwealth Exhibit 1 (interview recording). Third, he identifies inconsistences with the victim's accounts of the touching incident to her mother, the Children's Alliance, and the jury. Appellant's Brief at 12-14, *citing* N.T. 4/5/21, 97-100, 107, 126; Commonwealth Exhibit 1. Fourth, he suggests that the victim and her mother had a motive to fabricate the account of the abuse because Appellant and the victim's mother had competing custody claims involving the victim's half-siblings, and the timing of the initial report was suspect because it occurred a day before the half-siblings would be returned to Appellant and before a scheduled vacation for the victim and her mother that otherwise would have been a custody week for Appellant. Appellant's Brief at 14-16, *citing* N.T. 4/5/21, 111, 123, 129-30, 133, 135. Lastly, Appellant asserts that the testimony of the victim and her mother were inconsistent about whether an incident occurred where the victim's uncle, who is inflicted with Down syndrome and autism, became "overstimulated with the victim on a bed." Appellant's Brief at 16, *citing* N.T. 117, 143.

Initially, the following legal principles apply when a challenge to the weight of the evidence supporting a conviction is presented to a trial court:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. It has often been stated that a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.

*Commonwealth v. Clay*, 64 A.3d 1049, 1054-55 (Pa. 2013) (internal citations and quotation marks omitted).

With respect to the limits of a trial court's discretion, our Supreme Court has explained:

> The term 'discretion' imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

*Commonwealth v. Widmer*, 744 A.2d 745, 753 (Pa. 2000) (citation omitted).

This Court does not review the underlying question of whether the verdict is against the weight of evidence and instead reviews the trial court's exercise of discretion in denying a weight claim presented below:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Widmer*, 744 A.2d at 753 (internal citations omitted).

In its opinion, the trial court offers a recap of the testimony from L.L. and her mother and the pertinent portions of L.L.'s recorded interview with the Children's Alliance. Trial Court Opinion, 1/14/22, 5-7. It also offers us the following commentary on its review of the credibility of the trial evidence:

> In light of the testimony outlined above, I, like the jury, found the evidence presented at trial was neither unreliable, inconsistent, nor contradictory. L.L.'s recounting of the incident on all three occasions–to her mother, to the forensic interviewer, and at trial– were wholly consistent, even if each recounting was not precisely identical. Further, no testimony was presented that made the verdict so shocking to one's sense of justice and contrary to the evidence to warrant a finding that the verdict should be overturned.

*Id.* at 7-8 (footnote omitted). In an oversized footnote, the trial court specifically addresses each subpart of Appellant's weight claim from his post-

sentence motion. *Id.* at 8-10 n.5. We must review the court's considerations for rejecting each sub-part because that analysis forms the basis for the trial court's conclusion that the verdicts were not against the weight of the evidence.

In the first subpart, the court addresses Appellant's assertion that the verdicts were against the weight of the evidence because L.L.'s mother testified that she could not think of a time when L.L. was left "home alone" with Appellant. Trial Court Opinion, 1/14/22, 8 n.5, *citing* N.T. 4/5/21, 141. The court did not find this part of the weight claim persuasive because "[t]he whole of L.L.'s mother's testimony in no way foreclosed the possibility that L.L. and Appellant could have been alone together during the period in question." Trial Court Opinion, 1/14/22, 8 n.5. We find no abuse of discretion in this respect because L.L.'s mother did not testify that Appellant was never left alone with L.L., and instead her testimony reflected only that she could not remember a particular time during which L.L. was left alone with Appellant. That L.L.'s mother could not independently recall an opportunity for the incident to have occurred did not render incredible L.L.'s account of the assault or her testimony about being left alone with Appellant. The reasonable conclusion suggested by L.L.'s mother's testimony was that the opportunity for the abuse occurred at an inconsequential time for L.L.'s mother. *See* N.T. 4/5/21, 141 (during L.L.'s mother's testimony: "Q. But you can't think of any time that would have been? A. It could have been a snow day. I'm not sure."); *see also id.* at 96 (during L.L.'s testimony: "Q. And tell

me about the times it would be where [Appellant] was watching you. [W]here would mom be? A. She would probably be at work.").

Next, the court addresses Appellant's suggestion that the timing of L.L.'s disclosure of the assault was connected to a custody dispute between Appellant and L.L.'s mother. Trial Court Opinion, 1/14/22, 8-9 n.5. The court rejected that subpart of the weight claim because the court gleaned from the testimony that L.L. only had a "seemingly limited knowledge of the custody dispute" and, "considered in the context of the entirety of L.L.'s testimony," that knowledge did not render the verdict shocking. *Id.* The court highlighted L.L.'s testimony reflecting that, while she was aware of her mother and Appellant "fighting over custody," her mother never talked to her "about fighting with Appellant about the kids." *Id.*, *citing* N.T. 4/5/21, 95, 111. The approach taken by the trial court is entirely reasonable. The court found L.L. to be a credible witness and, upon accepting her testimony at face value, it did not support the notion either that her mother manipulated her into fabricating her account of the assault or that the twelve-year-old witness independently embarked on a scheme to frame Appellant because of a custody dispute that her mother never discussed with her. *See, e.g.,* N.T. 4/5/21, 111 (during L.L.'s testimony: "Q. Now, did you ever overhear your mom discussing custody issues at all or -- A. She usually kept it private because I don't think she wanted me to, like, get upset or hear anything.").

As for Appellant's assertion that L.L.'s testimony was inconsistent about the assault, the court responds that "although L.L.'s statement to her mother,

- 9 -

[her] forensic interview[,] and [her] trial testimony were not entirely identical, her various testimonies were not meaningfully inconsistent." Trial Court Opinion, 1/14/22, 9 n.5. While the court did not elaborate further on that point, the simple reality is that the jury as the fact finder was tasked with making a credibility determination, fully aware of the supposed inconsistencies, and resolved them in the Commonwealth's favor. A reasonable explanation for the differences in the accounts could be attributed to the child's relative comfort speaking with the forensic interviewer, as opposed to speaking to her mother about the sexual actions committed by her mother's husband. Moreover, another contributing factor to any inconsistency in the retelling of the abuse report would be the passage of more than nineteen months between the initial report to the victim's mother and the opportunity to testify at trial. We do not determine that the trial court committed an abuse of discretion when it found that the differences in L.L.'s accounts over time were properly resolved by that jury and that those differences did not render the verdicts shocking.

In the penultimate section, the court addresses Appellant's assertion that the verdict was against the weight of the evidence because L.L. and her mother were inconsistent about the existence of an incident where L.L.'s cognitively-impaired uncle was "overstimulated" with L.L. Appellant's Brief at 16; Trial Court Opinion, 1/14/22, 9-10 n.5. The court acknowledges that L.L.'s mother testified that her brother, who has Down syndrome and autism, "does something with his penis" when he is "overstimulated in a situation," and that,

on one occasion, that occurred while he was on a bed with L.L. *Id.* at 9, **citing** N.T. 4/5/21, 142-43. It also notes that L.L. testified that she did not remember "anything strange occurring" with her uncle or remembered seeing "his private area." *Id.* at 9-10, *citing* N.T. 4/5/21, 116-17. The trial court advises us that "[n]either L.L.'s mother's testimony[,] nor L.L.'s testimony regarding [the uncle,] is of such a nature to constitute the 'extraordinary circumstance' which would warrant a finding that the jury's verdict was against the weight of the evidence." *Id.* at 10. We cannot find any basis to disagree with the trial court's rejection of this sub-part of the weight claim. Any incident involving the uncle in these respects would only be relevant if there were indicia of an issue concerning mistaken identity and L.L. was improperly imputing acts by the uncle to Appellant. That did not appear to be the case based on the entirety of the victim's testimony. Furthermore, the details of the uncle's "overstimulation" would not naturally lend to a mistaken identity issue for credibility purposes because the uncle's alleged overstimulation related to him touching *himself* whereas L.L.'s account of the assault was about improper touching of herself *by another.*

With respect to the final subpart, the court addresses Appellant's assertion from the post-sentence motion that "[t]he victim testified that this occurred on only one occasion, after awaking from a bad dream, and when she wandered into her mother and [Appellant's] bedroom to find her mother." Trial Court Opinion, 1/14/22, 10 n.5; Post-Sentence Motion, 9/10/21, ¶ 6(e). The trial court was unable to materially address this portion of the claim

without further elaboration from Appellant. *See* Trial Court Opinion, 1/14/22, 10 n.5 ("I need not address this argument further because Appellant fails to elaborate how this testimony would cause me to find that the jury's verdict is against the weight of the evidence."). By failing to adequately develop this subpart of the claim with specificity in the post-sentence motion, Appellant waived this portion of his claim for purposes of our review. *See* Pa.R.Crim.P. 720(B)(1)(a) (requiring that post-sentence motions state claims for relief "with specificity and particularity"); *see, e.g., Commonwealth v. Rush*, 959 A.2d 945, 949 (Pa. Super. 2008) ("Moreover, for any claim that was required to be preserved, this Court cannot review a legal theory in support of that claim unless that particular legal theory was presented to the trial court.").[5]

We detect no abuse of discretion in the trial court's denial of Appellant's post-sentence weight of the evidence claim. It was purely within the jury's discretion to believe the victim and the Commonwealth's witnesses and we

---

[5] Absent waiver, this Court would not have concluded that this subpart of the claim would have affected the denial of the weight claim. In Appellant's elaborated version of the subpart of the claim in his appellate brief, he focuses on the fact that victim testified that she was frightened by a horror movie prior to her disclosure of the assault to her mother, that the mother testified that the victim did not tell her anything about a movie, and that the victim's disclosure in her Children's Alliance interview did not include any mention of a movie. Appellant's Brief at 11-12. Whether the victim had been frightened by a movie on the night of her disclosure of the abuse to her mother was an inconsequential circumstance in the overall chain of events of L.L. first telling her mother about the assault. Whether L.L.'s mother failed to recall her daughter mentioning anything about a movie at the time of the assault disclosure and whether L.L. failed to mention her fright from a movie in a subsequent interview about the assault would not have reasonably rendered the verdict in this case shocking.

will not disturb that on appeal.  The trial court reasonably determined that the

verdict in this case does not shock one's sense of justice.

Judgments of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/13/2023